UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHIRLEY JOY HEDGLIN,

                              Plaintiff,

        v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                              Defendant.

Case No. 3:10-cv-05551-KLS

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of her

application for supplemental security income ("SSI") benefits.  Pursuant to 28 U.S.C. § 636(c),

Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have

this matter heard by the undersigned Magistrate Judge.  After reviewing the parties' briefs and

the remaining record, the Court hereby finds that for the reasons set forth below, defendant's

decision to deny benefits should be affirmed.

                    FACTUAL AND PROCEDURAL HISTORY

        On October 10, 2006, plaintiff filed an application for SSI benefits, alleging disability as

of May 28, 2006, due to lupus and depression.  See Tr. 22, 116, 130.  Her application was denied

upon initial administrative review and on reconsideration.  See Tr. 65, 70.  A hearing was held

before an administrative law judge ("ALJ") on April 14, 2009, at which plaintiff, represented by

counsel, appeared and testified, as did a vocational expert.  See Tr. 35-61.

        On May 19, 2009, the ALJ issued a decision in which plaintiff was determined to be not

ORDER - 1

disabled. <u>See</u> Tr. 22-34. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on June 11, 2010, making the ALJ's decision defendant's final decision. <u>See</u> Tr. 1; <u>see</u> <u>also</u> 20 C.F.R. § 416.1481. On August 6, 2010, plaintiff filed a complaint in this Court seeking judicial review of defendant's decision. <u>See</u> ECF #1. The administrative record was filed with the Court on October 18, 2010. <u>See</u> ECF #7. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's final decision should be reversed and remanded for an award of benefits or, in the alternative, for further administrative proceedings, because the ALJ erred: (1) in finding plaintiff's depression to be non-severe; (2) in finding her left hip impairment did not meet or medically equal the criteria contained in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"), § 1.02; (3) in assessing her residual functional capacity; and (4) in finding her to be capable performing other jobs existing in significant numbers in the national economy. For the reasons set forth below, the Court disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore hereby finds that the ALJ's decision should be affirmed.

<u>DISCUSSION</u>

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. <u>See</u> <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>See</u> <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. <u>See</u> <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); <u>Carr v. Sullivan</u>, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational

interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.    The ALJ's Step Two Determination

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. At step two of that process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

Here, the ALJ found plaintiff's osteoarthritis of the left hip and chronic obstructive pulmonary disease to be "severe" impairments. See Tr. 24. The ALJ further found in relevant part as follows:

ORDER - 3

The claimant . . . alleges chronic depression. *See* Ex 16E/2, testimony. I find, however, that the claimant has not been significantly affected by her depressive symptoms and therefore find that impairment is not "severe" under the regulations. . . .

On psychological consultative examination with psychologist Dollean York-Anderson, Ph.D., in November of 2006, the claimant was very cooperative, neatly dressed, with no hygiene related problems. Her eye contact was very good, and the doctor was easily able to establish rapport with her. While the doctor noted that the claimant's physical movements were "slow and awkward," her responses to questions were congruent with the subject matter, and she was able to come to a coherent point when talking. Her mood was depressed and her affect was mood congruent. But she was oriented to date, place, and time, and she denied current suicidal or homicidal ideation. She was able to repeat seven digits forward and four digits backward. She was able to name five U.S. presidents since 1950 and five large U.S. cities. She was unable to calculate serial seven subtraction, but was able to calculate orally presented word problems for addition and subtraction, multiplication, and division. She was able to recall two of three objects after five minutes. The doctor concluded that the claimant's memory and concentration were good and her judgment fair. Ex 3F/I-2.

Dr. York-Anderson diagnosed depression (per claimant report) and assessed a global assessment of functioning (GAF) score of 55. Ex 3F/3. This score indicates that the claimant had moderate symptoms or moderate difficulty in social, occupational, or school functioning. *See The Diagnostic and Statistical Manual of Mental Disorders* [("DSM-IV")] at 32 (4th ed. 1994).[1] The doctor did not provide further functional assessment. I have considered this GAF score and its implications with regard to the claimant's residual functional capacity, but decline to give it much weight because it is not consistent with the objective medical evidence. First, the doctor qualified the depression diagnosis by stating this was "per claimant report." This implies that she relied more on the claimant's subjective reports of depression than on objective findings on examination. Second, the finding of moderate symptoms or moderate limitations in functioning is not consistent with Dr. York-Anderson's mental status examination or with the medical evidence of record as a whole. On subsequent review of the evidence 10 days later, for example, state agency psychological consultant Margaret Wharton Psy.D., concluded the claimant had only mild restrictions in the domains of the *B*

---

[1] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007). It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007). As noted by the ALJ, "[a] GAF of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) (quoting DSM-IV at 34).

ORDER - 4

criteria[, set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"), § 12.00,] of activities of daily living, social functioning, and concentration, persistence, and pace. Ex 4F/11. The doctor explained that the claimant's daughter reported that the claimant needed assistance with personal care due to her physical impairments, but was able to go out alone, drive, shop in stores. She reported that the claimant read as a hobby, handled her bills and finances, and followed written and spoken instructions very well. Ex 4F, *citing* Ex 4E. Dr. Wharton further noted that on the evaluation with Dr. York-Anderson, the claimant was cooperative, established rapport easily, and had very good eye contact. Her mood and affect were depressed, but she was oriented to date, place, and time. Her memory and concentration were fair, attributable to poor sleep and pain, not a psychologically based impairment. Ex 4F/13, citing Ex 3F.

Significant weight has been given to Dr. Wharton's assessment, as it is consistent with the medical evidence of record as a whole. Furthermore, findings of fact made by state agency medical and psychological consultants are considered expert opinion evidence from nonexamining sources. . . . These consultants are experts in evaluating medical and psychological issues in disability cases, and when their opinions are consistent with the medical evidence of record, as in this case, it is proper to accord the opinions significant weight. . . .

I therefore adopt Dr. Wharton's assessment of only mild restrictions in the functional domains of the *B* criteria of the 12.00 [L]istings. Because the claimant's impairments cause only mild limitations in these domains, I find that the claimant's mental health impairments are not "severe" impairments under the regulations. . . .

Tr. 26-27.

Plaintiff argues the ALJ erred in so finding. In support of that argument, plaintiff points to her own testimony and self-reports concerning her symptoms and limitations. But at step two, although the ALJ must take into account a claimant's pain and other symptoms (see 20 C.F.R. § 416.929), the ALJ's severity determination is made solely on the basis of the objective medical evidence in the record:

A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. *At*

> *the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.* If this assessment shows the individual to have the physical and mental ability(ies) necessary to perform such activities, no evaluation of past work (or of age, education, work experience) is needed. Rather, it is reasonable to conclude, based on the minimal impact of the impairment(s), that the individual is capable of engaging in SGA [substantial gainful activity].

SSR 85-28, 1985 WL 56856 *4 (emphasis added). Even if the ALJ was required to consider her subjective complaints at this step, furthermore, plaintiff has not challenged the ALJ's finding that she was not fully credible regarding such complaints. See Tr. 29-31. Thus, the ALJ did not have to accept as true any such complaints in any event.

Plaintiff also points to the fact that Dr. York-Anderson and Dr. Wharton diagnosed her with depression, and Dr. York-Anderson found her to be depressed upon examination. See Tr. 221-22, 226. But "[t]he mere existence of an impairment[, or of symptoms related thereto,] is insufficient proof of a disability" Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993). Plaintiff goes on to note the GAF score of 55 assessed by Dr. York-Anderson. See Tr. 222. As set forth above, however, the ALJ provided specific and legitimate reasons for not adopting it. See Tr. 26-27; Morgan v. Commissioner of the Social Security Admin., 169 F.3d 595, 601 (9th Cir. 1999) (opinion of physician premised to large extent on claimant's own report of symptoms and limitations may be disregarded where those complaints are properly discounted); see also Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ need not accept physician's opinion, if that opinion is brief, conclusory, and inadequately supported by clinical findings or by record as whole); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (non-examining, consultative physician opinion can constitute substantial evidence if it is consistent with other independent evidence in record). Accordingly, the Court finds the ALJ did not err in determining plaintiff's

ORDER - 6

depression to be non-severe.

II.     The ALJ's Step Three Determination

At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of the impairments listed in the Listings. See 20 C.F.R § 416.920(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). If any of the claimant's impairments meet or medically equal a listed impairment, he or she is deemed disabled. Id.  The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the Listings. See Tacket, 180 F.3d at 1098.  "A generalized assertion of functional problems," however, "is not enough to establish disability at step three." Id. at 1100 (citing 20 C.F.R. § 404.1526).

A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508, § 416.908.  It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." Id.; see also SSR 96-8p, 1996 WL 374184 *2 (determination that is conducted at step three must be made on basis of medical factors alone).  An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248 *2.

An impairment, or combination of impairments, equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed impairment." Id.; see also Sullivan v. Zebley, 493 U.S. 521, 531 (1990) ("For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed

ORDER - 7

impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment.") (emphasis in original). However, "symptoms alone" will not justify a finding of equivalence. Id. The ALJ also "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch v. Barnhart, 400 F.3d 676 (9th Cir. 2005).

The ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not meet or exceed Listings). This is particularly true where, as noted above, the claimant has failed to set forth any reasons as to why the Listing criteria have been met or equaled. Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (finding ALJ's failure to discuss combined effect of claimant's impairments was not error, noting claimant offered no theory as to how, or point to any evidence to show, his impairments combined to equal a listed impairment).

At this step, the ALJ found in relevant part that:

**. . . The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . .**

The claimant alleges that her hip impairment meets the criteria of [L]isting 1.02(A). *See* Ex 16E/8. I have considered counsel's arguments but conclude that the claimant's hip impairment fails to meet or to medically equal this or any other listing.

The claimant's counsel argued in a hearing brief that the claimant's joint disease satisfied the criteria for major dysfunction of a joint because her left hip was "subject to continuous, debilitating pain." Ex 16E. [The claimant's counsel] asserted that the claimant's hip and left leg were weak and that her range of motion was significantly impaired. I have considered this argument but find insufficient evidence that the claimant's hip impairment has resulted in an "inability to ambulate," as required by [L]isting 1.02. The [L]istings

define this term as an extreme limitation of the ability to walk that interferes very seriously with the individual's ability to initiate, sustain, or complete activities independently. Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device – such as a cane or a walker – that limits the functioning of both upper extremities. *See* 20 C.F.R. § 404, Appendix 1 to Subpart P, § l.00(B)(2)(b)(l).

Examples of ineffective ambulation include the inability to walk without the use of a walker, two crutches, or two canes; the inability to walk a block at a reasonable pace on rough or uneven surfaces; the inability to use standard public transportation; the inability to carry out routine ambulatory activities, such as shopping and banking; or the inability to climb a few steps at a reasonable pace with the use of a single hand rail. *See* 20 C.F.R. § 404, Appendix 1 to Subpart P, § l.00(B)(2)(b)(2).

In this case there is no evidence the claimant is limited to the degree outlined above. While she was given crutches after the fall at the grocery store, this was for the claimant's complaints of left knee pain, not to accommodate the hip impairment. Furthermore, as discussed above, the record contains no further discussion of crutches or of the alleged knee injury, and this impairment fails to meet the definition of a "severe" impairment, much less one that meets or equals listing levels. The claimant's daughter, Brittany Martin, reported in October of 2006 that the claimant had been prescribed a cane. Ex 4E/6. But the [L]isting's definition of "inability to ambulate" requires the use of two canes; therefore, the use of one cane is insufficient to demonstrate such an inability. The claimant's adequate ambulation is further evidenced by Ms. Martin's report and the claimant's testimony that the claimant was able to drive, as well as to shop and bank without assistance. *See* Ex 4E, testimony. The evidence is insufficient to establish that the claimant is unable to ambulate; therefore, I find that her impairment fails to meet the severity required under Listing l.02(A).

The claimant's remaining impairments also fail to meet or to medically equal the severity required of their respective listings, alone or in combination with her other impairments.

Tr. 27-28 (emphasis in original). Although plaintiff argues otherwise, as found by the ALJ, the medical evidence in the record fails to show plaintiff's hip impairment met or medically equals the criteria of Listing 1.02. Namely, that evidence fails to establish she ambulates ineffectively, i.e., that she has "insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper

ORDER - 9

extremities." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b(1); <u>see also</u> Tr. 216, 239-40, 245, 250, 255-57, 264-66, 268, 270, 273-74, 281-83, 288, 343, 363-71; <u>but see</u> Tr. 358-61 (addressed more fully below). Once more, plaintiff points to certain noted symptoms and reports of pain recorded upon examination, but again such evidence, without any specific assessed work-related limitations, is insufficient to establish disability.

III.     <u>The ALJ's Assessment of Plaintiff's Residual Functional Capacity</u>

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. <u>See</u> <u>id.</u> It thus is what the claimant "can still do despite his or her limitations." <u>Id.</u>

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. <u>See</u> <u>id.</u> However, an inability to work must result from the claimant's "physical or mental impairment(s)." <u>Id.</u> Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." <u>Id.</u> In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." <u>Id.</u> at *7.

In this case, the ALJ assessed plaintiff with the residual functional capacity to:

> **. . . perform sedentary work . . . , in that she is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently, to sit about 6 hours in an 8-hour workday, and to stand and/or walk at least 2 hours in an 8-hour workday, with no limitations with regard to pushing or pulling the above**

**amounts. The claimant is able occasionally to climb ramps and stairs, but she is unable to climb ladders, ropes, or scaffolds. The claimant is able occasionally to kneel, stoop, or crawl. She has no manipulative, visual, or communication limitations. She must avoid concentrated exposure to extremely cold temperatures, vibrations, fumes, odors, dusts, gases, poor ventilation –** *i.e.* **she requires an air conditioned environment – and hazardous machinery and heights.**

Tr. 28-29 (emphasis in original). Plaintiff argues the ALJ erred in assessing the above residual functional capacity, by not taking into account limitations due to her depression. But plaintiff fails to state with any specificity exactly what limitations those are. Regardless, as found by the ALJ at step two, plaintiff's depression constitutes a non-severe impairment, resulting in at most minimal work-related limitations.

Plaintiff also argues the ALJ erred by failing to take into account her chronic pain and her alleged difficulty remaining seated for a period of time. With respect to the latter limitation, this appears to be based solely on plaintiff's own testimony and self-reports, which the ALJ properly discounted, as discussed above.[2] Nor does plaintiff explain what further limitations should have been included in the RFC assessed by the ALJ due to her chronic pain. The Court finds as well that the medical evidence in the record fails to support such additional limitations.

Plaintiff goes on to assert the ALJ erred by not considering limitations arising from her alleged difficulty with remaining seated for a period of time. Plaintiff bases this assertion on an evaluation report completed by her chiropractor, which the ALJ dealt with as follows:

In January of 2009, the claimant's chiropractor, Andrew R. Hamilton, D.C., checked the box on a [state agency physical evaluation] form indicating that the claimant was "severely limited" by hip osteoarthritis, sciatica, hip pain, lumbar subluxations, sacroiliac subluxations, and trochanteric bursitis. The doctor said the claimant was markedly limited in sitting, standing, walking, lifting, handling, carrying. He then indicated again that the claimant would have restrictions in mobility, agility, or flexibility in the areas of balancing,

---

[2] For the same reason, the undersigned rejects plaintiff's assertion that the ALJ erred in not taking into consideration her testimony regarding the impact of her left leg symptoms.

bending, climbing, crouching, handling, kneeling, pushing, reaching, sitting, and stooping. Ex 17F/14. I have considered this assessment, but find that it is much too broad and therefore is given little weight. First, "severely limited" is defined on the [state agency physical evaluation] form as "unable to lift at least 2 pounds or unable to stand and/or walk." This is much too broad to describe the claimant's restrictions. The claimant did not mention any limitations in lifting in her testimony. As for the second part of the "severe limited" definition, it is clearly inaccurate to describe the claimant, as she is able to stand and/or walk. Furthermore, there is no basis in the medical evidence of record to support restrictions in handling, yet Dr. Hamilton twice indicated on the [state agency physical evaluation] form that the claimant was limited in this ability. I find Dr. Hamilton's assessment to be exaggerated and inconsistent with the medical evidence of record, including his own treatment notes, in these areas and therefore find his overall assessment of the claimant's abilities to be unreliable. I therefore give this assessment little weight.

Tr. 32. Plaintiff again fails to state with any specificity why any of the above reasons are invalid, which alone is a proper basis for rejecting that argument. See Carmicle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument, objection to district court's ruling was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued ordinarily will not be considered). Those reasons, furthermore, were proper. See Batson, 359 F.3d at 1195 (ALJ need not accept opinion if it is inadequately supported by clinical findings or by record as whole); Thomas, 278 F.3d at 957; Tonapetyan, 242 F.3d at 1149; see also Morgan, 169 F.3d 595, 601-02 (9th Cir. 1999) (upholding rejection of physician's opinion that claimant suffered from marked limitations in part on basis that other evidence of claimant's ability to function, including reported activities of daily living, contradicted that opinion); Magallanes v. Bowen, 881 F.2d 747, 754 (9th Cir. 1989) (ALJ properly rejected physician's opinion in part on basis that it conflicted with plaintiff's own subjective pain complaints).

ORDER - 12

IV.     The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)]; 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See Tr. 57-58. In response thereto, the vocational expert testified that there were other jobs an individual with the same limitations – and with the same age, education and work background as plaintiff – would be able to do. See Tr. 58. Based on the vocational expert's testimony, the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. See Tr. 32-33.

Plaintiff points out that in response to a second hypothetical question the ALJ posed, the

ORDER - 13

vocational expert testified that an individual who experienced an exacerbation of symptoms –
that could result in that individual missing up to four to eight hours of work per week – probably
would not be able to maintain employment. <u>See</u> Tr. 58-59. But other than plaintiff's own
testimony and the evaluation report submitted by her chiropractor – both of which, as discussed
above, the ALJ did not err in discounting – there is no reliable evidence in the record to support
such a limitation. As such, the ALJ was not required to adopt that limitation or to accept the
vocational expert's testimony based thereon.

Lastly, plaintiff argues the ALJ should have adopted the vocational expert's testimony
that the use of a cane with one hand would preclude an individual from maintaining employment
in any of the jobs identified at the hearing. The vocational expert, though, did not actually testify
as described by plaintiff. Rather, the vocational expert testified that such a limitation "would be
a problem in [the] assembly jobs" indentified and possibly the "touchup screener" job, but not in
"any [of the] other jobs . . . mentioned," such as the order clerk and charge account clerk (Tr. 58-
59), which the ALJ found plaintiff could perform (<u>see</u> Tr. 33). Accordingly, the Court finds the
ALJ's step five determination is supported by substantial evidence.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court finds the ALJ properly concluded plaintiff
was not disabled, and therefore hereby affirms the ALJ's decision.

DATED this 17th day of June, 2011.

Karen L. Strombom
United States Magistrate Judge

ORDER - 14